**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
GLADYS FELICIANO VELEZ        :    Civ. No. 3:18CV01101(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,           :
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :    April 3, 2019
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Gladys Feliciano Velez ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner. [Doc. #24]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #26].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #26**] is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #24**] is **DENIED.**

## I.  PROCEDURAL HISTORY[1]

Plaintiff filed an application for DIB on January 14, 2015, alleging disability beginning January 1, 1999. See Certified Transcript of the Administrative Record, Doc. #19, compiled on August 9, 2018, (hereinafter "Tr.") at 220-26. Plaintiff later amended her alleged onset date to June 30, 2013. See Tr. 42.[2] Plaintiff's application was denied initially on June 30, 2015, see Tr. 95-98, and upon reconsideration on November 5, 2015, see Tr. 101-03.

Following the denial of plaintiff's application, on October 5, 2017, plaintiff, represented by Attorney Kerin M. Woods, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Ryan A. Alger. See Tr. 38-60.[3] Plaintiff testified with the assistance of a Spanish-language interpreter. See Tr. 40. Vocational Expert ("VE") Hank Lerner also testified at the

---

[1] Plaintiff filed a Statement of Material facts with her motion and supporting memorandum [Doc. #24-2], to which defendant filed a Responsive Statement of Facts [Doc. #26-2].

[2] The beginning of the ALJ's decision states that plaintiff "requested to amend the alleged onset date to June 20, 2013." Tr. 15. That date appears to be a typographical error in light of the hearing testimony reflected at page 42 of the administrative record and other portions of the ALJ's decision, which state that plaintiff's amended alleged onset date is June 30, 2013. See Tr. 17, Tr. 23.

[3] Plaintiff, who was then unrepresented, appeared by video conference at a hearing on January 19, 2017, before ALJ Timothy Belford. See Tr. 62-67. The hearing was adjourned so that plaintiff could obtain legal representation. See generally id.

hearing. See Tr. 55-59; see also Tr. 408-13. On November 1, 2017, the ALJ issued an unfavorable decision. See Tr. 9-30. On May 10, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. See Tr. 1-8. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review. See Doc. #1. She now moves to reverse the Commissioner's decision. [Doc. #24]. On appeal, plaintiff argues:

1. The ALJ erred when determining plaintiff's Residual Functional Capacity ("RFC");

2. The ALJ erred when assessing plaintiff's credibility; and

3. The ALJ's step four findings are not supported by substantial evidence.[4]

See generally Doc. #24-1. As set forth below, the Court finds that the ALJ's decision is supported by substantial evidence and there is no reversible error.

## II. **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether

_____

[4] The Court has reordered the sequence in which plaintiff's arguments appear in her brief.

the determination is supported by substantial evidence. <u>See</u>
<u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation
omitted). Substantial evidence is evidence that a reasonable
mind would accept as adequate to support a conclusion; it is
more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305
U.S. 197, 229 (1938)). The reviewing court's responsibility is
to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u>
<u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation
omitted).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made

according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citations omitted)

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described sequential evaluation
process, the ALJ concluded that since the amended alleged onset
date of June 30, 2013, through the date of his decision,
plaintiff was not disabled under the Act. See Tr. 23. At step
one, the ALJ found that plaintiff had not engaged in substantial
gainful activity since the amended alleged onset date of June
30, 2013. See Tr. 17. At step two, the ALJ found that plaintiff
had the severe impairments of "fibromyalgia, degenerative disc
disease of the cervical and lumbar spine, and osteoarthritis of
her left shoulder[.]" Id. The ALJ found plaintiff also suffered
from the following non-severe impairments: breast
fibrosclerosis; hypertension; asthma; diverticulosis;
"gastoesophageal reflux disease"; and cataracts. See Tr. 17-18.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of any of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. See Tr. 18-19. The ALJ specifically
considered listings 1.04 (disorders of the spine) and 1.02
(major dysfunction of a joint). See id. The ALJ considered
plaintiff's fibromyalgia "under the requirements of SSR 12-2p."
Tr. 19.

The ALJ next found plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)
> except she could only occasionally climb ramps and
> stairs, never climb ladders, ropes or scaffolding,
> perform no overhead work with her bilateral upper
> extremities, and perform no work around unprotected
> heights.

Id. At step four, the ALJ concluded: "The claimant is capable of

performing past relevant work as a Social Worker. This work does

not require performance of work-related activities precluded by

the claimant's residual functional capacity (20 CFR 404.1565)."

Tr. 23. Thus, the ALJ determined that plaintiff "has not been

under a disability, as defined in the Social Security Act, from

June 30, 2013, through the date of []his decision[.]" Id.

## V.  DISCUSSION

Plaintiff raises several arguments in support of reversal

or remand. See generally Doc. #24-1. The Court addresses each in

turn.

### A.  RFC Determination

Plaintiff asserts that the ALJ's RFC determination is

flawed in three respects. First, plaintiff contends that the ALJ

erred by failing to consider plaintiff's ability to communicate

in English. See Doc. #24-1 at 3. Second, plaintiff contends that

the RFC "is not consistent with the medical evidence and

testimony[]" related to plaintiff's bilateral hand and wrist

symptoms. Id. at 9-10. Third, plaintiff asserts that the ALJ

failed to "recognize the severity of plaintiff's back and neck symptoms[.]" Id. at 12. Defendant responds that substantial evidence supports the ALJ's RFC determination. See generally Doc. #26-1 at 5-13.

Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1545(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§404.1545(a)(1), (3).

### 1. *Ability to Communicate in English*

Plaintiff asserts that "[t]he ALJ must consider the plaintiff's ability to communicate in English when determining the plaintiff's RFC." Doc. #24-1 at 3. Plaintiff contends that the ALJ erred because he failed "to make any findings at all in his RFC as to the plaintiff's ability to communicate in English." Id. In support of that position, plaintiff relies on 20 C.F.R. §404.1564(b)(5). See id.

Plaintiff's reliance on 20 C.F.R. §404.1564 is misplaced. That Regulation governs "education as a vocational factor" and addresses the categories used to evaluate a claimant's educational level, including, inter alia, "a person's ability to communicate in English[.]" 20 C.F.R. §404.1564(b)(5). The RFC, however, does not account for such vocational factors. Rather, the RFC "is the most the claimant can do despite the limitations

of her physical or mental impairments." Gray v. Astrue, No. 04CV3736(JCF), 2007 WL 2874049, at *3 (S.D.N.Y. Oct. 3, 2007), report and recommendation adopted as modified, 2009 WL 1598798 (June 8, 2009); see also 20 C.F.R. 404.1545(a)(1) ("Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations.").

A plaintiff's RFC is determined as part of the fourth step of the sequential evaluation, and it is not until "the fifth and last step" that the ALJ considers plaintiff's "residual functional capacity and [his or her] age, education, and work experience to see if [he or she] can make an adjustment to other work." 20 C.F.R. §§404.1520(a)(iv)-(v) (emphasis added). As this Court and others have noted: "A claimant's ability to communicate in English is evaluated as a vocational factor of education at step five of the sequential evaluation." Yulfo-Reyes v. Berryhill, No. 3:17CV2015(SALM), 2018 WL 5840030, at *10 (D. Conn. Nov. 8, 2018); see also Durakovic v. Comm'r of Soc. Sec., No. 3:17CV894(TJM)(WBC), 2018 WL 4039372, at *9 (N.D.N.Y. May 30, 2018) ("A plaintiff's ability to communicate in English is assessed at step five under the vocational factor of education."), report and recommendation adopted, 2018 WL

4033757 (Aug. 23, 2018); <u>Sonia V. v. Comm'r of Soc. Sec.</u>, No. 5:18CV22(ATB), 2019 WL 428829, at *7 (N.D.N.Y. Feb. 4, 2019) (same). Accordingly, the ALJ was <u>not</u> required to consider plaintiff's ability to communicate in English when assessing plaintiff's RFC.[5] Indeed, as will be discussed <u>infra</u>, because this matter was decided at step four of the sequential evaluation, the ALJ was not required to proceed to step five where vocational factors, including education, are considered. Thus, there is no error on this point.

### 2. *Bilateral Hand and Wrist Symptoms*

Plaintiff raises several arguments in connection with the ALJ's consideration of her alleged bilateral hand and wrist symptoms. The Court addresses each in turn.

Plaintiff first asserts that the ALJ "ignore[d] the plaintiff's testimony at the hearing that she stopped working in 2013 because she was unable to perform the duties of her job because of her physical symptoms[,]" including a report stating plaintiff "made changes to her work activity one year before she stopped working, including no longer writing reports because of symptoms of arthritis[.]" Doc #24-1 at 10-11 (citing Tr. 257). Plaintiff's argument is without merit. The ALJ expressly stated

---

[5] Counsel for plaintiff advanced this same argument in a separate matter, which the Court rejected on similar grounds. <u>See</u> <u>Cardenas v. Berryhill</u>, No. 3:16CV01216(SALM), 2017 WL 3621073, at *11 (D. Conn. Aug. 23, 2017).

in his decision: "In hearing, the claimant testified that she
last worked in June of 2013, retiring due to her physical
impairments." Tr. 19 (sic); see also Tr. 21 (noting plaintiff's
retirement in 2013 and the reported "severity of her symptoms at
that time[]"). Although the ALJ did not explicitly address the
report relied on by plaintiff, it is well settled that "an ALJ
is not required to discuss every piece of evidence submitted.
An ALJ's failure to cite specific evidence does not indicate
that evidence was not considered." Brault v. Soc. Sec. Admin.,
Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal citation and
quotation marks omitted). Accordingly, the Court finds no error
on this point.

Plaintiff next contends that "the ALJ failed to recognize
that while the plaintiff had symptoms related to joint pain
beginning in 1999, she reported worsening joint pain and spasms
in 2013 and 2014, when treated in Puerto Rico, before relocating
to Connecticut." Doc. #24-1 at 11 (citing Tr. 456-57). Again,
plaintiff is mistaken. The ALJ considered plaintiff's reported
worsening symptoms and found those complaints not entirely
credible:

> In summary, the totality of the record shows that the
> claimant has reported a long history of widespread joint
> pain beginning in 1999, but was capable of continuing to
> engage in successful gainful work activity until she
> retired from her occupation in 2013. Despite her
> allegations in hearing regarding the severity of her
> symptoms at that time, the record shows that when the

> claimant moved to Connecticut in 2014, she received
> generally conservative treatment for her impairments[.]

Tr. 21 (emphasis added). Additionally, the record on which

plaintiff relies in support of this argument is taken out of

context. The medical record, a translation from the original

Spanish-language document, states: "The patient complains of

spam. The patient refers that her symptoms are worsened by

movement its improve with pain medication[.]" Tr. 455 (sic).

Although the physical examination conducted on that date

revealed a spasm in plaintiff's neck, the examination of

plaintiff's musculoskeletal system reflected "No Pain" and "No

Complaints[.]" Tr. 456. Accordingly, the Court also finds no

error on this point.

Plaintiff next contends that "[t]he ALJ expressly failed to

recognize the severity of the symptoms that the plaintiff

experienced in her hands and wrists bilaterally." Doc. #24-1 at

11. To the contrary, the ALJ stated in his decision: "The

claimant testified that she experienced symptoms of pain,

numbness and swelling in her hands and feet, causing her

difficulties performing repetitive activities with her hands

such as writing." Tr. 19. Plaintiff cites to several pieces of

evidence which purportedly support the conclusion that the ALJ's

"[f]ailure to include limitations in bilateral hand use in the

RFC was in error." Doc. #24-1 at 12; see also id. at 11-12. The

question, however, is not whether substantial evidence supports plaintiff's position, but rather, whether substantial evidence supports the ALJ's decision. See Bonet, 523 F. App'x at 59. Here, substantial evidence supports the ALJ's decision not to assign limitations on the basis of plaintiff's alleged bilateral hand and wrist symptoms.

Pertinent to the Court's analysis is the well-established principle that the ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983); accord Gonzalez v. Berryhill, No. 3:17CV1385(SALM), 2018 WL 3956495, at *15 (D. Conn. Aug. 17, 2018). Here, despite a lengthy record, which includes roughly 800 pages of medical records, a minority reflect plaintiff's complaints of bilateral hand and wrist pain during the relevant time period.

Plaintiff relies on medical records reflected at pages 551 through 617 of the record, which are barely legible progress notes from Access Rehab Centers. See Tr. 551-617. Plaintiff's statement of material facts represents that these records reflect plaintiff "underwent physical therapy and steroid injections at Access Rehab Centers in Waterbury for treatment of hand and wrist pain; trigger finger and tenosynovitis; neck and thoracic pain and headache between May 22, 2014, and January 22, 2015 with only short-term benefit." Doc. #24-2 at 2, ¶7 (citing

Tr. 551-617). Defendant agrees with that statement and further clarifies:

> [B]illing records show that Plaintiff had occupational therapy from May 5, 2014 through August 6, 2014 for left trigger finger, left wrist pain, and decreased left grip strength. The remainder of plaintiff's sessions at Access Rehab Center from June 2014 through January 2015 were physical therapy sessions to treat her neck pain, headaches and decreased cervical range of motion.

Doc. #26-2 at 2, ¶7.a. The Court's de novo review of the record reflects that defendant's representation is generally accurate -- plaintiff received occupational therapy for her left trigger finger, left wrist pain, and decreased left grip strength for three months, between May 2014 and August 2014. See Tr. 551-65. Plaintiff also reported numbness in both hands on two occasions in September 2014, see Tr. 583, Tr. 585, and a burning sensation in her hands on one occasion in November 2014, see Tr. 607. Her rehabilitation potential was noted as "[g]ood[.]" Tr. 555.

Otherwise, between 2014 and 2017, there is a dearth of medical records reporting, or otherwise reflecting, plaintiff's complaints of bilateral hand and wrist symptoms. This is confirmed by plaintiff's statement of material facts. See generally Doc. #24-2 at 2-4. Indeed, many of plaintiff's visits to her treating doctors during this time do not reflect any complaints of hand or wrist pain. See, e.g., Tr. Tr. 525-28 (July 20, 2014: "Denies other medical problems other than chronic muscle spasms and left shoulder pain and decreased

ROM."); Tr. 504 (September 18, 2014, treatment record reflecting a "Normal" examination of plaintiff's left and right fingers and hands); Tr. 618-23 (February 25, 2015, treatment record: "Also c/o back/neck/shoulder pain"); Tr. 985-89 (April 22, 2016, treatment record: "Here to f/u neck, back pain"); Tr. 997-1002 (January 18, 2016, treatment record: "Left shoulder, beck, low back pain x years"); Tr. 1036-41 (March 31, 2017, treatment record: "Muscle aches generalized"). In 2015, consultative examiner Dr. Noel found plaintiff had grip strength of 4 out of 5 bilaterally and a normal range of motion of her wrists. See Tr. 660; see also id. ("The patient has no limitations with manipulative skills of the hand.").

It is not until April 2017 that the medical records reflect plaintiff's complaints of bilateral hand and wrist pain with abnormal examinations. See Tr. 1092, Tr. 1172. Although these two medical records reflect tenderness and abnormalities in plaintiff's hands and wrists, see Tr. 1093, Tr. 1172, this does not overcome the other substantial evidence of record supporting the ALJ's decision to omit limitations relating to those symptoms. Evidence supporting this aspect of the ALJ's decision includes: (1) plaintiff's lack of bilateral hand and wrist complaints over a period of nearly three years; (2) Dr. Noel's findings on examination; (3) the objective medical evidence, see Tr. 1095-96 (April 7, 2017, MRI of plaintiff's hands reflecting

"[m]ild degenerative changes in the right wrist[]"); (4) the opinions of the state reviewing, non-examining physicians, see Tr. 76, Tr. 90 (opining plaintiff had "[u]nlimited" function in gross and fine manipulation); and (5) plaintiff's reports to her medical providers that she had no difficulties in her activities of daily living, see Tr. 854 Tr. 986, Tr. 1038, Tr. 1046 ("No difficulty with activities of daily living and able to do one's own cooking."); Tr. 1052 ("No difficulty with activities of daily living and able to do one's own cooking."); Tr. 1059.

Accordingly, the Court finds substantial evidence supports the ALJ's decision not to assign limitations related to plaintiff's alleged bilateral hand and wrist symptoms.

3.    *Neck and Back Symptoms*

Plaintiff next contends that "the ALJ's failure to recognize the severity of the plaintiff's back and neck symptoms and to not incorporate the findings into the RFC is error. The plaintiff's symptoms of joint pain and restrictions are caused by osteoarthritis and not by degenerative disc disease." Doc. #24-1 at 12. Defendant responds that plaintiff "is mistaken. The ALJ noted that plaintiff complained of back and neck pain, and that imaging studies generally revealed mild abnormalities." Doc. #26-1 at 10. Defendant also contends that the ALJ "explicitly acknowledged" the "etiology" of plaintiff's symptoms. Id.

Plaintiff's categorization of the ALJ's decision is not accurate. The ALJ considered and summarized the evidence of record, including plaintiff's subjective statements, diagnostic imaging results, the results of plaintiff's physical examinations, and plaintiff's diagnoses, including her "fibromyalgia and osteoarthritis." Tr. 21. Additionally, in concluding that plaintiff retained the ability to perform light work (with the other assessed postural limitations), the ALJ stated: "As a result of the claimant's fibromyalgia, degenerative disc disease of her lumbar and cervical spine, and joint osteoarthritis, I find that the claimant would be restricted to performing work at the light exertional capacity[.]" Tr. 21-22.

The ALJ was not required to consider only the evidence related to plaintiff's osteoarthritis. Rather, the Regulations dictate that a claimant's RFC will be "based on all of the relevant evidence in [his or her] case record." 20 C.F.R. §404.1545(a)(1); see also id. at (a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The ALJ adequately considered the severity of plaintiff's neck and back symptoms based on the totality of the evidence of record. See Tr. 20-21. Substantial evidence supports the finding that plaintiff was capable of light work given the normal to mild findings on examination.

See, e.g., Tr. 456, Tr. 459, Tr. 463, Tr. 466 (2013 and 2014 examinations of plaintiff's musculoskeletal system reflecting "No Pain, No Complaints"); Tr. 504 (September 19, 2014, examination reflecting normal gait and examination of plaintiff's cervical spine); Tr. 516 (normal gait, stance and examination of plaintiff's musculoskeletal system on November 6, 2014); Tr. 526 (July 30, 2014, examination of musculoskeletal system: "Overall findings were normal."); Tr. 621 (February 25, 2015, examination reflecting normal gait and stance); Tr. 874-75 (July 16, 2015, examination, reflecting: tenderness on palpation to back; no muscle spasm; normal findings as to plaintiff's musculoskeletal system; negative straight leg raising test; and normal gait); Tr. 987 (April 22, 2016, examination: "Cervical spine showed tenderness on palpation" but "showed no weakness."); Tr. 1039 (March 31, 2017, examination reflecting plaintiff's neck, back and gait were all normal); Tr. 1093 (April 4, 2017, examination noting tenderness of neck and spine); Tr. 1122 (May 6, 2016, examination noting plaintiff's neck to be normal and tenderness to plaintiff's back and spine). Diagnostic imaging further supports the ALJ's findings. See Tr. 440, Tr. 626, Tr. 632, Tr. 883, Tr. 1003-04 (diagnostic imaging of plaintiff's lumbar and cervical spine).

In connection with her RFC argument, plaintiff also asserts that the ALJ erroneously "chose to disregard [Dr. Noel's]

findings, only accepting the limited portion of Dr. Noel's report that was helpful to a finding of no disability." Doc. #24-1 at 13. Defendant responds that the ALJ "reasonably concluded that Dr. Noel's report was entitled to partial weight." Doc. #26-1 at 7. With respect to Dr. Noel's report, the ALJ summarized Dr. Noel's findings and decided to

> afford partial weight to the opinion of Dr. Noel. He is not a treating source with only one opportunity to evaluate the claimant, limiting the scope of his opinion, and his opinion is vague, without a function-by-function assessment of the claimant's limiting, reducing the persuasive value of his opinion. However, his findings on examination are generally consistent with the totality of the treatment record, showing diffuse areas of tenderness in the claimant's joints, limited range of motion in her cervical and lumbar spine, but generally intact neurological functioning[.] Additionally, the opinion that the claimant would have no manipulative limitations is generally consistent with the totality of the record, showing no consistent findings on examination of the claimant's bilateral hands[.]

Tr. 22 (internal citations omitted) (sic).

The ALJ's decision to afford Dr. Noel's opinion partial weight is supported by substantial evidence. Generally, "a consulting physician's opinions or report should be given limited weight because they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Harrington v. Colvin, No. 6:13CV1230(MAD), 2015 WL 1275337, at *7 (N.D.N.Y. Mar. 19, 2015) (citation and quotation

marks omitted)). Further, as the ALJ observed, Dr. Noel's ultimate opinion is vague, and essentially "useless in evaluating whether [plaintiff] can perform [any] work." Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. §404.1560(c)(2), as recognized in Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (The opinion of the consultative examiner was "remarkably vague" where the examiner used the terms "mild degree" and "intermittent," and the meaning of those terms were "left to the ALJ's sheer speculation."). To the extent the ALJ credited the findings of Dr. Noel's examination, those findings are generally supported by other evidence of record, as summarized, supra. Thus, the Court finds no error with the partial weight afforded to Dr. Noel's opinion.

Accordingly, the Court finds no error concerning the ALJ's consideration of plaintiff's neck and back impairments.

B.  Credibility Determination

Plaintiff next contends that the ALJ erred in his assessment of plaintiff's credibility. See Doc. #24-1 at 14-18. Specifically plaintiff asserts that the ALJ erred by: (1) failing to consider plaintiff's extensive work history; (2) failing to consider plaintiff's reasons for non-compliance with treatment referrals; and (3) relying on plaintiff's alleged

continued engagement in successful work activity until she
retired in 2013. See id. at 14-17. Defendant responds that the
ALJ's credibility findings are supported by substantial
evidence. See Doc. #26-1 at 7-10.

After summarizing plaintiff's testimony, and a "careful
consideration of the evidence," the ALJ found that plaintiff's
"medically determinable impairments could reasonably be expected
to cause the alleged symptoms[,]" but that plaintiff's
"statements concerning the intensity, persistence and limiting
effects of these symptoms are not entirely consistent with the
medical evidence and other evidence in the record for the
reasons explained in" his decision. Tr. 20. The ALJ then stated:

> As it pertains to the claimant's pain, the record shows
> that the claimant has reported a long history of
> widespread joint pain, going back multiple years prior
> to her alleged onset date, with imaging and diagnostic
> testing revealing generally mild abnormalities.
> Recently, the claimant has received specialty treatment
> and it was determined the etiology of her reported
> symptoms was fibromyalgia. However, the record does not
> show that the claimant has experienced significant
> change or deterioration in her condition since it
> initially appears, and does not support a determination
> that this condition would result in work related
> limitations prohibiting her from performing her past
> relevant work.

Tr. 20. After summarizing the relevant medical evidence, the ALJ
concluded:

> [T]he totality of the record shows that the claimant has
> reported a long history of widespread joint pain
> beginning in 1999, but was capable of continuing to
> engage in successful gainful work activity until she

retired from her occupation in 2013. Despite her allegations in hearing regarding the severity of her symptoms at that time, the record shows that when the claimant moved to Connecticut in 2014, she received generally conservative treatment for her impairments, consisting of non-narcotic medications and physical therapy. Despite the provided referral of her primary care provider, the claimant did not receive specialty care for nearly two years following her move, and declined to undergo the recommended aquatic therapy and chiropractic care. On diagnostic imaging, the claimant displayed generally mild abnormalities in her shoulder, wrist, lumbar and cervical spine, without evidence of stenosis, nerve root compromise, or joint instability. Despite the claimant's allegations regarding her significantly limited functional capacity, the claimant reported to her treating source that she exercised and had no difficulties attending to her activities of daily living (Ex. 6F, 7; 26F, 15, 29). Additionally, the record shows that the claimant reported symptoms of pain have been managed primarily through non-narcotic pain medication. In general, I find that the claimant's treatment course is inconsistent with her allegations regarding the severity of her symptoms, and resulting functional limitations, particularly regarding her limited tolerance for prolonged standing and walking.

Tr. 21.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The regulations set forth a two-step process that the ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to

produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §404.1529(b). <u>Second</u>, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §404.1529(c); <u>see generally</u> SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (describing two-step process used to evaluate a claimant's subjective symptoms).[6] The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions

---

[6] "SSR 16-3p, which became effective March 28, 2016, supersedes SSR 96-7p, which was promulgated in 1996. On October 25, 2017, the SSA republished SSR 16-3p, detailing how to apply the ruling as it relates to the applicable date. Specifically, the SSA indicated that adjudicators should apply SSR 16-3p rather than SSR 96-7p when making a determination on or after March 28, 2016." <u>Kearney v. Berryhill</u>, No. 1:16CV652(MAT), 2018 WL 5776422, at *5 (W.D.N.Y. Nov. 2, 2018). Because the ALJ's decision is dated November 1, 2017, SSR 16-3p applies here. <u>See id.</u>

due to pain or other symptoms." 20 C.F.R. §404.1529(c); see also
SSR 16-3P, 2017 WL 5180304, at *7-8.

   1.   *Work History*

Plaintiff first asserts that the ALJ erred in assessing her
credibility because he failed to account for her good work
history. See Doc. #24-1 at 14-15. Defendant responds that a
claimant's work history is just one of many factors an ALJ may
consider and that his failure to explicitly discuss that factor
does not necessarily mean it was not considered. See Doc. #26-1
at 9-10.

"[A] good work history may be deemed probative of
credibility. Work history, however, is just one of many factors
appropriately considered in assessing credibility." Wavercak v.
Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (internal citations
and quotation marks omitted); see also Campbell v. Astrue, 465
F. App'x 4, 7 (2d Cir. 2012); Legg v. Colvin, 574 F. App'x 48,
49-50 (2d Cir. 2014). Indeed, "good work history ... not
specifically referenced in the ALJ's decision does not undermine
the credibility assessment," provided that "substantial evidence
support[s] the ALJ's determination." Wavercak, 420 F. App'x at
94; accord Campbell, 465 F. App'x at 7.

Although the ALJ did not specifically reference plaintiff's
work history in his credibility assessment, it is apparent from
his decision that he was aware of plaintiff's work history. The

ALJ referenced plaintiff's prior work in his decision no fewer than three times. See Tr. 19 (Plaintiff "testified that she last worked in June 2013, retiring due to her physical impairments."); Tr. 20 ("The record shows that the claimant received treatment while she was living and working in Puerto Rico[.]"); Tr. 21 ("In summary, the totality of the record shows that the claimant has reported a long history of widespread joint pain beginning in 1999, but was capable of continuing to engage in successful gainful work activity until she retired from her occupation in 2013."). Additionally, at step four, the ALJ considered, and explicitly found, that plaintiff was capable of performing her past relevant work as a social worker. See Tr. 23. As will be discussed below, the ALJ appropriately assessed plaintiff's credibility, and that assessment is supported by substantial evidence. Thus, "[t]he ALJ's decision not to rely exclusively on [plaintiff's] good work history was therefore not erroneous." Campbell, 465 F. App'x at 7.[7]

---

[7] Plaintiff primarily relies on the non-controlling case of Ingrassia v. Colvin, 239 F. Supp. 3d 605, 627 (E.D.N.Y. 2017), to support her argument that the ALJ erred by not explicitly considering her work history. See Doc. #24-1 at 15-16. Ingrassia, however, is distinguishable. There, the ALJ did not consider the seven factors set forth in 20 C.F.R. 404.1529(c). See id. at 528. As will be discussed, here, the ALJ appropriately considered the factors set forth in that Regulation. The other cases relied upon by plaintiff are each distinguishable for similar reasons. See Cullen v. Comm'r of Soc. Sec., No. 15CV1180(JCF), 2016 WL 3144050, at *7 (S.D.N.Y. May 19, 2016) (The ALJ erred in assessing plaintiff's

2. *Treatment Recommendations*

Plaintiff asserts that in discounting her credibility, the ALJ erroneously relied on plaintiff's failure to comply with certain treatment recommendations without considering plaintiff's explanations for that non-compliance. See Doc. #24-1 at 16-17. Defendant contends that the ALJ "reasonably concluded on the basis of the totality of the evidence in the record that Plaintiff's claims of disabling pain and functional limitations were not consistent with her conservative course of treatment and failure to follow treatment recommendations and referrals[.]" Doc. #26-1 at 9.

Although an ALJ may properly consider a plaintiff's failure to follow treatment as prescribed, "[t]he law is clear, that an ALJ may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may provide." Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009); see also Schlichting v. Astrue, 11 F. Supp. 3d 190, 207

---

credibility where, inter alia, he "failed to characterize the plaintiff's testimony accurately" and "devote[d] significant attention to the plaintiff's description of his daily activities[.]"); Fernandez v. Astrue, No. 11CV3896(DLI), 2013 WL 1291284, at *19 (E.D.N.Y. Mar. 28, 2013) (The ALJ erred in assessing plaintiff's credibility where, inter alia, the ALJ found "Plaintiff's testimony ... was not credible, because it was inconsistent with the RFC as determined by the ALJ[]" and failed "to provide any further basis for finding Plaintiff not credible [.]"); Bradley v. Colvin, 110 F. Supp. 3d 429, 446 (E.D.N.Y. 2015) (same).

(N.D.N.Y. 2012) (The "ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." (citation and internal quotation marks omitted)).

Plaintiff does not take issue with the ALJ's reliance on plaintiff's failure to comply with the recommendation that she undergo aquatic therapy or chiropractic treatment, presumably because the ALJ explicitly noted plaintiff's explanation for that noncompliance elsewhere in his decision. See Tr. 21 ("[T]he claimant declined physical therapy and chiropractic care due to the cost[.]"). It is not apparent, however that the ALJ considered plaintiff's explanation for failing to comply with the referral to see an orthopedist. See Tr. 937 ("Pt was referred to ortho last yr – did not get to appt as UCONN and Norwich Ortho unable to see her – pt was sent a letter asking if OK to go to Hartford, but pt states she disregarded the letter because she was not sure what it meant. Pt speaks only some English. ... Pt states she si still interested in ortho referral[.]" (sic)). "Nevertheless, the ALJ's failure to consider plaintiff's explanation[] would be harmless error, as plaintiff's noncompliance was but one of several factors

considered when assessing plaintiff's credibility." <u>Gonzalez</u>,
2018 WL 3956495, at *6.

Accordingly, because the ALJ's consideration of plaintiff's
non-compliance with treatment recommendations was but one factor
in the ALJ's overall credibility determination, which, as will
be discussed, complies with the Regulations and is supported by
substantial evidence, there is no reversible error. <u>See</u>
<u>Schlichting</u>, 11 F. Supp. 3d at 207 (ALJ committed harmless error
where "[t]he reference to Plaintiff's failure to pursue
treatment ... was only part of the ALJ's credibility
assessment."); <u>Kuchenmeister v. Berryhill</u>, No. 16CV7975(HBP),
2018 WL 526547, at *19 (S.D.N.Y. Jan. 19, 2018) ("ALJ Katz's
error was harmless. ALJ Katz's overall determination to discount
plaintiff's subjective complaints is supported by substantial
evidence, even if plaintiff's inconsistent attendance at therapy
sessions is ignored.").

3.    *Successful Work Activity*

Plaintiff next asserts that "[t]he ALJ also erroneously
stated in discounting the plaintiff's credibility that she
continued to engage in successful work activity until she
retired from her occupation in 2013." Doc. #24-1 at 17.
Plaintiff contends the ALJ ignored plaintiff's testimony that

"she stopped working in 2013 because she was unable to perform the duties of her job because of her physical symptoms." Id.[8]

The ALJ did not err in relying on plaintiff's prior work activity. Indeed, he explicitly stated in his decision: "[T]he claimant testified that she last worked in June of 2013, retiring due to her physical impairments." Tr. 19. Further, the record supports the ALJ's finding that plaintiff continued to work despite her reported "long history of widespread joint pain, going back multiple years prior to her alleged onset date[.]" Tr. 20; see, e.g., Tr. 721 (Plaintiff complained of "severe muscle spasm ... due to poor posture at work" in 1999.); Tr. 472 (August 22, 2012, medical record noting plaintiff's complaints of neck pain and muscle spasm); Tr. 475 (March 19, 2012, medical record noting assessment of "Osteoarthrosis, generalized, multiple sites"); Tr. 485 (April 12, 2010, medical record noting plaintiff's complaints of joint pain); Tr. 486 (January 25, 2010, medical record noting plaintiff's complaints of back pain); Tr. 489 (September 9, 2009, medical record noting plaintiff's complaints of neck pain and muscle spasm on examination); Tr. 496 (November 6, 2008, medical record noting

---

[8] Plaintiff also contends the ALJ ignored the SSA Report of SGA Determination, which states plaintiff required changes to her prior work activity due to her physical symptoms. See Doc. #24-1 at 17. The Court has already considered and rejected this argument. See Section V.A.2., supra.

plaintiff's complaint of back pain); Tr. 497 (June 2, 2008, medical record noting plaintiff's complaints of neck and back pain); Tr. 1120 (May 6, 2016, medical record noting the onset of plaintiff's neck pain was "20 years ago"). Although plaintiff did need some accommodations at her prior job, she nevertheless continued to engage in successful gainful employment until she retired in 2013. See Tr. 361 (Work History Report noting plaintiff worked from 1993 to June 2013 as an "Administrative Aide and Soc Work" (sic)). Accordingly, the Court finds no error on this point.

4.  *Credibility Finding, Generally*

Despite plaintiff's claims of error, the Court finds that the ALJ's credibility findings are supported by substantial evidence. In assessing plaintiff's credibility, the ALJ considered plaintiff's conservative course of treatment (including the use of non-narcotic medications), the consistency of plaintiff's statements in light of the objective medical evidence and other evidence of record, and plaintiff's activities of daily living. The ALJ appropriately considered each of those factors, which are supported by substantial evidence of record.

First, plaintiff's conservative treatment, including the use of primarily non-narcotic pain medications, is well-documented throughout the record. See, e.g., Tr. 407 (medication

list); Tr. 551-617 (physical therapy records); Tr. 618 (noting plaintiff "[h]ad been using motrin" for pain but that it "only helped a little" (sic)); Tr. 950-51 (medication list); Tr. 1067 (noting referrals for aqua therapy and chiropractic treatment); Tr. 1092 (noting plaintiff's use of Flexeril and Motrin, and that she has a "lidocaine patch[]"); Tr. 1093 ("The patient is given exercises with her shoulder, climbing the wall. She is encouraged to use Flexeril and increased range of motion and stretching as able. ... She can use Tylenol Extra Strength when needed as well as her lidocaine patch[.]"). "While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into account along with other factors." Rivera v. Comm'r of Soc. Sec., No. 18CV372(BCM), 2019 WL 1227938, at *14 (S.D.N.Y. Mar. 15, 2019). Here, plaintiff's conservative treatment was but one of many factors considered by the ALJ. Thus, "[i]t was proper for the ALJ to consider Plaintiff's ... conservative treatment in evaluating h[er] credibility." Holdridge v. Comm'r of Soc. Sec., 351 F. Supp. 3d 316, 325 (W.D.N.Y. 2018); see also Mayor v. Colvin, No. 15CV0344(AJP), 2015 WL 9166119, at *21 n.29 (S.D.N.Y. Dec. 17, 2015) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record.").

Second, the ALJ properly considered the consistency of plaintiff's subjective statements with the objective medical evidence, including "diagnostic imaging," which "displayed generally mild abnormalities in her shoulder, wrist, lumbar and cervical spine, without evidence of stenosis, nerve root compromise, or joint instability." Tr. 21. That statement is supported by the record. See Tr. 440, Tr. 501, Tr. 626, Tr. 632, Tr. 883, Tr. 1003. The ALJ also properly considered the inconsistencies between plaintiff's statements and other evidence of record, including plaintiff's conflicting statements concerning her activities of daily living. Compare Tr. 1046, Tr. 1052, Tr. 1059, Tr. 1148 (plaintiff's report to her primary care physician that she had "[n]o difficulty with activities of daily living"), with Tr. 47, Tr. 51-52 (plaintiff's testimony regarding her limited activities of daily living), and Tr. 295 (Disability Report describing plaintiff's activities: "I cannot do anything. ... I have a lot of trouble getting dressed, bathing and doing anything that requires using my arms and hands."). "Here, the ALJ found inconsistencies between [plaintiff's] statements and the evidence. ... Thus, the ALJ acted well within his discretion in concluding that [plaintiff] was less than credible on at least some of her claims." Burnette v. Colvin, 564 F. App'x 605, 609 (2d Cir. 2014); see also Cherry v. Colvin, No. 3:13CV1440(SRU), 2016 WL 164988, at *4 (D. Conn.

Jan. 14, 2016) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record[.]" (citation omitted)).

Third, the ALJ appropriately considered plaintiff's reported activities of daily living, including the multiple reports to her primary physician that she had no difficulties in that area. See Tr. 1046, Tr. 1052, Tr. 1059, Tr. 1148. "The law is clear that the ALJ may consider a claimant's purported activities of daily living for the purposes of a credibility determination. Indeed, the Commissioner's regulations expressly identify daily activities as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." Coger v. Comm'r of Soc. Sec., 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (internal citation and quotation marks omitted). Thus, the ALJ properly considered plaintiff's activities of daily living in making his credibility assessment.

Here, where the ALJ has identified specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot

do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

C.   Step Four Determination

Last, plaintiff contends that the ALJ erred at step four because the hypothetical provided to the VE "failed to expressly refer to the plaintiff's limited ability to communicate in English." Doc. #24-1 at 5. Accordingly, plaintiff asserts that "the hypothetical was not based on substantial evidence." Id. Defendant responds that plaintiff "is mistaken, as the ALJ was not required to consider her literacy or ability to communicate in English prior to determining whether she can perform her past relevant work." Doc. #26-1 at 14.

At step four, the ALJ concluded that plaintiff "is capable of performing past relevant work as a social worker." Tr. 23. In support of that conclusion, the ALJ stated:

> The vocational expert testified that someone with the claimant's residual functional capacity would be capable of performing the claimant's past relevant work, as it was both actually and generally performed. Therefore, I find that the claimant's past relevant work is not precluded by her residual functional capacity.

Id.; see also Tr. 56-59 (VE testimony).

As previously noted, the ability to communicate in English is an educational factor, which is considered at step five of the sequential evaluation. See generally Section V.A.1., supra. Where, as here, plaintiff has been found capable of performing

her past relevant work, "[v]ocational factors of age, education, and work experience should not be considered at step four of the disability analysis[.]" Ladouceur v. Colvin, No. 7:15CV159(MAD)(TWD), 2016 WL 1175231, at *2 (N.D.N.Y. Mar. 25, 2016) (emphasis added); see also Bussi v. Barnhart, No. 01CV4330(GEL), 2003 WL 21283448, at *6 (S.D.N.Y. June 3, 2003) ("A claimant's inability to speak English is irrelevant to the determination of whether she can perform her past relevant work, however, because the Regulations direct that as long as the claimant's ailments themselves do not prevent her from meeting the mental and physical demands of the job, the claimant must be found not disabled."); Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992) ("[A]t step four, vocational factors are not considered in determining whether or not a claimant retains the residual functional capacity to perform past relevant work."); Efimova v. Barnhart, No. 04CV778(RF), 2005 WL 1251058, at *2 (W.D. Tex. May 17, 2005) ("Consideration of a claimant's ability to speak English to determine whether one can perform past relevant work is not required or relevant." (footnote omitted)). Indeed, "[b]ecause the ALJ found Plaintiff capable of returning to h[er] past relevant work at step four of the sequential evaluation, he was not required to proceed to step five to consider vocational factors such as age, education, and work experience." Petrie v. Astrue, No. 08CV1289(GLS)(VEB), 2009 WL

6084277, at *10 (N.D.N.Y. Nov. 10, 2009) (emphasis added),

report and recommendation adopted, 2010 WL 1063836 (Mar. 19,

2010), aff'd, 412 F. App'x 401 (2d Cir. 2011).

Plaintiff cites to many cases in support of her position

that the ALJ was required to consider plaintiff's ability to

communicate in English when determining whether plaintiff was

capable of performing her past relevant work. See Doc. #24-1 at

5-6, 7-9. However, each of the cases cited by plaintiff, with

the exception of Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir.

2001), was decided at step five of the sequential evaluation and

therefore, is not applicable to the circumstances of this case,

which was decided at step four.[9] Although Pinto was decided at

---

[9] See Lugo v. Chater, 932 F. Supp. 497, 500 (S.D.N.Y. 1996)
(Using the Grid Rules, "[t]he ALJ concurred with the vocational
expert that Lugo could perform limited types of sedentary work,
and concluded that a substantial number of jobs existed in the
national economy which Lugo could still perform."), adhered to
on reconsideration (Apr. 19, 1996); Vega v. Harris, 636 F.2d
900, 902 (2d Cir. 1981) ("As the Secretary concedes, Vega
demonstrated that she could not perform her former work. The
Secretary, therefore, had the burden of proving Vega's capacity
to perform other work." (citation omitted)); Suarez v. Colvin,
No. 1:13CV198(BAM), 2015 WL 351424, at *3 (E.D. Cal. Jan. 23,
2015) ("Plaintiff alleges that the ALJ erred at Step Five[.]");
Coria v. Comm'r of Soc. Sec., No. 1:13CV1643(SAB), 2014 WL
7178159, at *4 (E.D. Cal. Dec. 16, 2014) ("Plaintiff contends
that the ALJ erred at step five[.]"); Centeno v. Astrue, No.
10CV382(RFC), 2012 WL 728073, at *3 (W.D. Tex. Mar. 5, 2012)
("Plaintiff claims that the ALJ's finding at step five is not
supported by substantial evidence."); Muniz v. Berryhill, No.
17CV433(CBG), 2018 WL 4635032, at *3 (W.D. Okla. Sept. 27, 2018)
("The Court agrees with Plaintiff that the ALJ's step-five
finding is not supported by substantial evidence."); Lopez v.
Colvin, No. 3:14CV571(BH), 2015 WL 1473677, at *9 (N.D. Tex.

step four, the Ninth Circuit explicitly refused to reach the issue of whether language abilities should be considered at that step. See id. at 848. Additionally, Pinto is not binding on this Court. Thus, the case law relied on by plaintiff is not persuasive.

At step four, when "deciding whether the claimant has satisfied th[e] burden [to show an inability to perform her past relevant work], the ALJ is allowed to rely on testimony from a vocational expert." Whitehouse v. Colvin, No. 3:13CV894(MPS), 2014 WL 4685187, at *4 (D. Conn. Sept. 19, 2014); see also Hackett v. Comm'r of Soc. Sec., No. 5:16CV692(ATB), 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ("At step four of the disability analysis, the ALJ has the option to rely on VE testimony.").

The Court has previously determined that the ALJ's RFC determination is supported by substantial evidence. See Section V.A., supra. Because the ALJ's hypothetical to the VE tracked his ultimate RFC determination, see Tr. 57, the step four finding is supported by substantial evidence and there is no error. See Robinson v. Berryhill, No. 15CV6513(FPG), 2017 WL 1131967, at *6 (W.D.N.Y. Mar. 27, 2017) (Where the RFC determination was supported by substantial evidence, and "the

_____

Mar. 31, 2015) ("Plaintiff argues that substantial evidence does not support the ALJ's step five finding[.]").

hypothetical questions posed to the VE adequately reflected the RFC determination[,] ... the ALJ was entitled to rely on the VE's responses[,]" and thus, "the ALJ's step four analysis was supported by substantial evidence." (internal citations omitted)); Lewis v. Colvin, No. 1:13CV1152(MAT), 2017 WL 1046744, at *3 (W.D.N.Y. Mar. 19, 2017) ("The hypothetical posed to the VE was consistent with Dr. Miller's findings as well as the RFC found by the ALJ, and the ALJ was therefore entitled to rely upon the VE testimony in making his step four finding."); Rivera-Cruzada v. Comm'r of Soc. Sec., 741 F. App'x 737, 740 (11th Cir. 2018) ("[T]he VE's testimony that Rivera-Cruzada could perform his past relevant work as a chauffeur without being able to speak English does not conflict with the DOT[,]" where "the DOT listing for chauffer does not specifically require the claimant's language be English.").

## VI.  CONCLUSION

For the reasons stated, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #26**] is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner [**Doc. #24**] is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 3rd day of April, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE